UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| ANTHONY BETTERTON, individually | § | 2:12-cv-00699 |
| and in his official capacity as Sheriff of | § | |
| Upshur County; JILL MCCOY, | § | |
| individually and in her official capacity as | § | |
| Lieutenant of Upshur County Jail, and | § | |
| UPSHUR COUNTY, | § | |
| DEFENDANTS | § | |

**PRISON LEGAL NEWS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Prison Legal News ("PLN") requests a preliminary injunction to stop Defendants from censoring books and magazines PLN mails to inmates in the Upshur County Jail.  Defendants should be enjoined from violating PLN's right to due process and underlying rights to free speech under the First Amendment to the U.S. Constitution and Article I, Section 8 of the Texas Constitution.

I.  DEFENDANTS CENSOR PLN'S PROTECTED COMMUNICATION WITH INMATES

A.  *PLN Educates Prisoners – Core Protected Speech.*

Communicating with prisoners is the core of PLN's charitable mission.  PLN publishes a monthly 56-page educational magazine ("the magazine") about the legal rights of incarcerated people.  The publication provides information about prison conditions, excessive force, prison rape, etc.  The magazine is core protected speech, which is not objectionable on security or other grounds.[1]  It has been published continuously since 1990.

---

[1] A copy of the July 2011 issue, the first issue censored by the Upshur County jail, is attached as Exhibit A.  The content of each issue is substantially similar.  If the Court would benefit from examining each issue that was censored, PLN can supply copies to the court.

PLN also distributes books about prisoners' constitutional rights.  PLN has approximately 7,000 subscribers nationwide, including subscribers incarcerated in Upshur County Jail.

B. *Upshur County Jail Routinely Censors PLN's mail.*

Since July 2011, PLN has been sending the magazine, books and informational brochures to prisoners in the Upshur County Jail.  Each item of mail is individually addressed with postage pre-paid.

Upshur County Jail routinely censors PLN's mail.  Since July 2011, PLN has received returned copies of its monthly magazine and books from the Upshur County Jail.  Out of approximately 223 issues of PLN's magazine sent since July 2011, at least 86 issues were rejected and sent back.  Many books have been returned the same way.

- In July 2011, PLN received eight returned copies of the magazine sent to prisoners at Upshur County Jail. Each magazine was officially stamped "Refused," "Return To Sender" and "No Newspaper."  PLN also received one returned copy of *Protecting Your Health and Safety*, which was marked "RTS" (Return To Sender).

- In October 2011, PLN received a returned copy of the magazine sent to one of the prisoners at Upshur County Jail.  The packaging was stamped with "Refused," "Return To Sender" and "No Newspaper."

- In January 2012, PLN received eighteen returned copies of the magazine sent to prisoners at Upshur County Jail.  Each issue was stamped "Refused."  PLN also received two returned copies of *Protecting Your Health and Safety* marked "RTS," "Returned to Sender," and "Refused."

- In February 2012, PLN received seven returned copies of the magazine sent to prisoners at Upshur County Jail. Each of these issues was stamped "Refused."

- In March 2012, PLN received five returned copies of the magazine sent to prisoners at Upshur County Jail. Each issue was stamped "Refused." Plaintiff also received three returned copies of *Protecting Your Health and Safety*. Each copy of the book was marked "RTS" and "Not Approved by Chief."

- In April 2012, PLN received twenty-seven returned copies of the magazine sent to prisoners at Upshur County Jail. Each of these issues was stamped "Refused," "Return To Sender" and/or "No Newspaper."

- In June 2012, PLN received nine returned copies of the magazine sent to prisoners at Upshur County Jail. Each of these issues was marked "Refused."

- In July 2012, PLN received five returned copies of the magazine sent to prisoners at Upshur County Jail. Each of these issues was marked "Refused."

- In August 2012, PLN received five returned copies of the magazine sent to prisoners at Upshur County Jail. Each of these issues was marked "Refused."

C. *Upshur County's Mail Censorship Policy is Not Narrow, Objective, or Definite.*

Upshur County Jail's inmate handbook contains no criteria to explain why a publication will be rejected. It merely states:

> All periodicals, magazines, newspapers, and other similar items will be individually inspected. This inspection will be conducted to ensure these items do not contain restricted information and will be rejected on a case-by-case basis. All such materials must have prior approval to be received and must be mailed from the publisher to the inmate.[2]

Upshur County Jail's policy on incoming mail does not guarantee any notice to the sender or any explanation when a book is censored. At most, returned items are stamped with a brief notation on the front that says "Refused," "Return to Sender," "No Newspaper," "Unable to Forward," or "Not Approved by Chief." Only a prisoner may file a written appeal, not the sender.[3]

## II. PLN IS ENTITLED TO A PRELIMINARY INJUNCTION

PLN is entitled to a preliminary injunction against Defendants' censorship. A preliminary injunction should be granted when a movant proves:

(1) Substantial likelihood of prevailing on the merits.

(2) Substantial threat of suffering irreparable injury if the injunction is not granted.

(3) The threatened injury to Plaintiff outweighs the threatened harm to the Defendants.

(4) Granting the preliminary injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).[4] PLN satisfies all four elements.

---

[2] Exhibit B, pp. 3-4, para 3.

[3] Exhibit C, Upshur County Jail, Prisoner Rules of Conduct and Handbook. pp. 17-18 (as labeled in the footers).

[4] Because Defendants are public actors, the third and fourth elements are properly considered together. *See Speigel v. City of Houston,* 636 F.2d 997, 1002 (5th Cir. 1981).

A. **PLN is Substantially Certain to Prevail on Its Due Process and Free Speech Claims.**

PLN is substantially certain to prevail on the merits of its three claims.[5] Defendants' written policy offers PLN no due process before censoring its mailing, making it facially unconstitutional under the Fourteenth Amendment.

Further, PLN's underlying First Amendment rights are being violated. Upshur County has instituted either a wholesale ban on PLN's mail or created an *ad hoc*, wholly arbitrary custom and practice of rejecting random PLN mailings.   Either method of censorship is unconstitutional.

B. **PLN is Substantially Certain to Prevail on the Merits of Its Due Process Claim.**

PLN, as a publisher, has a well-established right to due process when jail authorities reject its publications.  At minimum, it is entitled to be notified that a publication will not be delivered and given an opportunity to respond.  *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004); *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996); *Prison Legal News v. Lehman*, 397 F.3d 692, 701, (9th Cir. 2005) ("prison officials must provide minimum procedural safeguards to protect inmates' interest in receiving mail by notifying inmates of their decision not to deliver letters").

Upshur County Jail's policy lacks any procedural safeguards to protect the First Amendment rights of those sending mail to inmates. The policy is devoid of any procedure by which the sender of censored mail will be notified. In practice, Defendants only provide notice of censorship if and when a censored magazine or book is returned to sender.  When that happens, Defendants give no explanation of any purported justification for the censorship.   Further,

---

[5] For the Court to grant a preliminary injunction, PLN need only show a likelihood of success on the merits, not conclusively demonstrate it will prevail at trial. *See Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The "likelihood of success" analysis is considerably less formal and is not binding on parties at trial. *Id.*

Defendants' written policy offers no appeal process for publishers and other outsiders whose mail has been censored.

Failure to provide constitutionally adequate notice, an opportunity to respond, and an opportunity to appeal violates PLN's right to due process.  The practice should be enjoined.

C.  PLN is Substantially Certain to Prevail on the Merits of Its First Amendment Claim.

The Supreme Court recognizes publishers have a First Amendment interest in access to incarcerated people through the mail. *Thornburgh v. Abbott,* 490 U.S. 401, 408 (1989). Courts around the country have held that PLN's publications and mailings are deserving of First Amendment protection.[6]

PLN's correspondence with prisoners addresses issues of corrections policy and other social and political matters of public concern.  It is "core political speech." *Prison Legal News v. Cook*, 238 F.3d 1145, 1146, 1149 (9th Cir. 2001) ("[PLN's speech] is core protected speech, not commercial speech or speech whose content is objectionable on security or other grounds"). This type of speech "occupies the highest rung on the hierarchy of First Amendment values," and is entitled to special protection. *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal citation omitted).  Either a total ban of its mail, or the arbitrary exclusion of items of mail, would be unconstitutional.

(a) *Total Bans on Mail are Unconstitutional*

A jail may not limit the Constitutional rights of an inmate except to the limited extent it is necessary to achieve a valid penological goal.  Therefore, it may not institute wholesale exclusion of the types of publications inmates may receive (e.g. all magazines or all books)

---

[6] *See Prison Legal News v. Cook*, 238 F.3d 1145, 1146, 1149 (9th Cir. 2001) (PLN's monthly magazine, categorized as "subscription non-profit organization mail", is protected speech under the First Amendment); *Prison Legal News v. Lehman,* 397 F.3d 692, 699-701 (9th Cir. 2005) (PLN's "non-subscription bulk mail and catalogs" are protected speech under the First Amendment); *Prison Legal News v. Livingston*, 683 F.3d 201, 213 (5th Cir. 2012) (unsolicited books sent by PLN are protected speech under the First Amendment).

because wholesale bans are neither limited to publications actually warranting censorship nor do they offer publishers like PLN an alternative means to exercise their First Amendment rights.[7]

In both prisons and jails, many courts issue injunctions halting wholesale bans.  *See, e.g. Prison Legal News v. Lehman*, 397 F.3d 692, 699-700 (9th Cir. 2005) (prison's ban on non-subscription bulk mail and catalogs unconstitutional); *Mann v. Smith*, 796 F.2d 79, 82 (5th Cir. 1986) (county jail's policy of banning newspapers and magazines violated pretrial detainee's First Amendment rights); *Jacklovich v. Simmons*, 392 F.3d 420, 428 (10th Cir. 2004); *Kincaid v. Rusk*, 670 F.2d 737, 744 (7th Cir. 1982).

### (b) *Arbitrary Censorship of Mail is Unconstitutional*

To the extent a prison or jail may enact policies limiting First Amendment rights, those policies must be rational.  *See Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008) ("[R]ationality is the controlling factor").

Upshur County's arbitrary rejection of PLN's mail is not rational. Out of approximately 200 issues of PLN's magazine sent over the course of one year, at least sixty-two issues were rejected and sent back to PLN, along with other books and letters.  The issues of PLN's magazine are all substantially the same – though the content of each issue is different, the magazine largely addresses the same issues and themes each month.  Rejecting random magazines – or rejecting a book one day and permitting it another – is arbitrary censorship.  It is not a rational restriction of First Amendment rights for the achievement of a penological goal and is therefore unconstitutional.

D.   PLN is Substantially Certain to Prevail on the Merits of its Texas Constitutional Claim.

---

[7] "In assessing the 'reasonableness' of a prison regulation that infringes on First Amendment interests, a court must consider four factors: (1) whether the regulation is 'rationally related' to a legitimate penological goal; (2) whether alternative means of exercising First Amendment rights remain open; (3) the impact that accommodating the asserted right will have on other prisoners and prison employees; and (4) whether there are easy and obvious alternative means of accommodating the asserted right" *See Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012).

The Texas Constitution provides greater protection for free speech than the U.S. Constitution. *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992).   Under the Texas Constitution, prior restraints on speech are presumptively unconstitutional.  *Id.*

A law or policy that limits speech by requiring government permission before expression is a prior restraint. *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). *Accord Kaczmarek v. State*, 986 S.W.2d 287, 290 (Tex.App.–Waco 1999) (no pet.) (an ordinance granting an administrator authority to grant or deny a permit for expressive conduct, without standards limiting discretion, is a form of prior restraint).

Defendants' policy to inspect all "periodicals, magazines, newspapers" mailed to inmates, and requiring they be approved before an inmate may receive them, is a prior restraint.

> Prior restraints fall on speech with a brutality and a finality all their own.... [T]he violator of a statute punishing speech criminally knows that he will go before a jury, and may be willing to take his chance, counting on a possible acquittal. A prior restraint, therefore, stops more speech more effectively. A criminal statute chills, prior restraint freezes.

*Davenport*, 834 S.W.2d at 9 n. 14 (citing Alexander M. Bickel, *The Morality of Consent* 61 (1975)). It is unconstitutional for Defendants to exercise prior restraint without narrow, objective, or definite criteria to restrain administrators' discretion.

III. <u>PLN Will Suffer Irreparable Injury Without an Injunction</u>

PLN will suffer immediate and irreparable injury if this Court does not prevent Defendants from censoring its mailings while denying PLN the opportunity to respond or appeal.

For harm to be "imminent," there must be "a reasonable probability that a real injury... will occur if the injunction is not granted." *See United States v. Emerson*, 270 F.3d 203, 262 n.64 (5th Cir. 2001) (internal quotations omitted). For a harm be "irreparable," it must be an injury that cannot be undone through monetary damages. *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).

### A. *PLN's Harm is Imminent*

The harm that Defendants are causing PLN is not just imminent, but ongoing. Defendants have censored PLN's mail without due process since July 2011.  Pursuant to their written policies, they will continue to do so.

### B. *PLN's Harm is Irreparable*

PLN's loss of due process is an irreparable harm.  *Murillo v. Musegades*, 809 F.Supp. 487, 498 (W.D. Tex. 1992) (plaintiffs established irreparable injury by demonstrating their rights to Fourth and Fifth Amendment protection were violated).  Defendants have censored PLN's mail since at least July 2011, if not earlier. At no time have they given PLN due process.

Further, PLN relies on its ability to send its publications through the mail to communicate with inmates. By actively censoring mail sent by PLN to inmates, Defendants have effectively cut off PLN's only line of communication to people housed in Upshur County Jail.  "The loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

A preliminary injunction is necessary to stop the continuing violation of PLN's constitutional rights to free speech and due process. Every day this preliminary injunction is not granted, PLN suffers irreparable injury.

### IV. *Granting an Injunction Would Serve the Public Interest;  Injury to PLN Outweighs Harm to Defendants.*

Because Defendant Upshur County is a public institution and Defendants Sheriff Betterton and Lieutenant McCoy are public servants, the third and fourth elements are properly considered together. *See Speigel v. City of Houston,* 636 F.2d 997, 1002 (5th Cir. 1981).

When evaluating the balance of harm between parties for the purposes of a preliminary injunction, a defendant government entity must show a quantifiable harm, not just a generalized

8

interest in exercising its police power.[8]  Defendants cannot show they would suffer a quantifiable harm from a preliminary injunction.

The issuance of a preliminary injunction would not adversely affect the public interest, either. "No long string of citations is necessary to find that the public interest weighs in favor of having access to a free flow of constitutionally protected speech."  *ACLU v. Reno*, 929 F.Supp. 824, 851 (E.D.Pa. 1996).  "Concomitantly, there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties." *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).

The public has a strong interest in assuring that constitutional rights are respected. *Cohen v. Coahoma County, Miss.*, 805 F.Supp. 398, 408 (N.D.Miss. 1992).  The public interest would be protected, not harmed, by a preliminary injunction.

V.  *PLN Should Not Be Required to Post More Than a Minimal Bond.*

PLN requests it not be required to post bond if the preliminary injunction is granted. It is within the Court's discretion to require posting security for a preliminary injunction. *City of Atlanta v. The Metropolitan Area Rapid Transit Authority*, 636 F.2d 1084, 1094 (5th Cir. 1981); *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

PLN is a nonprofit organization dedicated to the charitable mission of education.  Its financial means are limited.  Furthermore, the purpose of posting a bond is to "pay the costs and

---

[8] *Compare Villas at Parkside Partners v. City of Farmers Branch*, 496 F.Supp.2d 757, 776-77 (N.D. Tex. 2007) (noting that the city had failed to identify any specific, quantifiable harm that it would suffer as a result of the preliminary injunction) *with Lee v. Commissioners' Court of Jefferson County*, 81 F.Supp.2d 712, 717 (E.D. Tex 2000) (finding that defendant city would suffer significant harm from the preliminary injunction in the form of rising construction costs, increased financing costs, and the cost required to arrange the bond issue a second time).

damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. Rule Civ. Proc. 65(c). *City of Atlanta*, 636 F.2d at 1094. As noted above, Defendants do not stand to suffer any quantifiable costs or damages if the preliminary injunction is issued, and would therefore receive no benefit if a bond were posted.

PLN respectfully requests the Court exercise its discretion and not require posting a bond.

<u>CONCLUSION</u>

PLN requests the Court issue a preliminary injunction against Defendants, prohibiting them from continuing to enforce the publication ban at the Upshur County Jail during the pendency of this case.

Dated: November 1, 2012.

Respectfully submitted,

 /s/ Brian McGiverin
Brian McGiverin
Texas Bar. No. 24067760
Scott Medlock
Texas Bar No. 24044783
James C. Harrington
Texas Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
Tel. (512) 474-5073
Fax (512) 474-0726

ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Eastern District of Texas.

 /s/ Brian McGiverin
Brian McGiverin